**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAWN CAVAGNETTO,

      Defendant-Appellant,

          v.

WILLIAM STOLTZ,

      Plaintiff-Appellee.

No. 14 C 10384
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In this action, Dawn Cavagnetto appeals two bankruptcy court decisions that were entered in favor of her ex-husband, William Stoltz, in the adversary proceedings Stoltz initiated in her Chapter 7 bankruptcy case. Cavagnetto argues that the bankruptcy court erred by denying her leave to amend her counterclaim and holding her responsible for a mortgage that she executed along with her husband before their marriage. For the following reasons, I affirm the bankruptcy court's judgment with respect to both of these decisions.

## BACKGROUND

A few months before their wedding in September 1996, Dawn Cavagnetto and William Stoltz purchased a multi-unit building located at 1625 S. Harlem Ave., Berwyn, Illinois (the "Berwyn Property") from Stoltz's mother and stepfather, Fred and Claire Barton. To fund their purchase, Cavagnetto and Stoltz executed a mortgage in favor of Fred and Claire Barton (the "Barton Mortgage"). Although the Barton Mortgage is dated March 1, 1996, it was not recorded until January 2, 2001.

Three months after Cavagnetto filed a petition for dissolution of marriage on January 4, 2000, Cavagnetto sought permission to sell the Berwyn Property, which the state court granted

1

on May 16, 2000. The Barton Mortgage had not yet been recorded when this order was entered.

To prevent his wife from selling the Berwyn Property, Stoltz filed a motion to vacate and to reconsider the state court's May 16, 2000 order. The state court granted Stoltz's motion on July 10, 2000 and gave him permission to run the Berwyn property under the condition that Stoltz "shall hold [Cavagnetto] free, harmless and indemnified against any losses the marital estate may incur during the time of his management and control" ("The Indemnification Clause").

The Barton Mortgage was recorded in January 2001—five months after Stoltz received control of the Berwyn Property. In early 2002, Stoltz sought leave to list the Berwyn Property for sale, which the state court granted. Meanwhile, Cavagnetto filed a fraud and quiet title action seeking a determination that the Barton Mortgage was invalid. After the Berwyn Property sold in July 2002, the state court determined that the Barton Mortgage was a valid mortgage and the Bartons received $101,292.08 in proceeds from the sale of the Berwyn Property as payment on their mortgage loan. There was no surplus available to be distributed to Stoltz and Cavagnetto.

Meanwhile, the divorce proceedings between Cavagnetto and Stoltz had not yet reached a resolution. In December 2003, the state court conducted a trial on the merits of Cavagnetto's petition for dissolution of marriage and Stoltz's counter-petition. Because Cavagnetto did not appear at the trial, she was defaulted as to her petition for dissolution of marriage and the matter proceeded on Stoltz's counter-petition. As a result of the trial, Stoltz was assigned the debt owed to the Bartons via the Barton Mortgage when their marriage dissolution was entered on January 14, 2004.

Stoltz filed a Chapter 7 bankruptcy petition on July 25, 2005. Shortly thereafter, on December 30, 2005, the Bartons sued Cavagnetto on the allegedly unpaid balance due on the

Barton Mortgage. This suit was still pending when Cavagnetto filed her Chapter 7 petition on December 31, 2009. After Cavagnetto filed for bankruptcy, the Bartons filed a claim for $73,454.27 for an alleged deficiency on the Barton Mortgage that arose when the Berwyn Property was sold in 2002.

Stoltz filed his own adversary complaint in Cavagnetto's bankruptcy case on April 22, 2010. After various motions were heard by the court, including a motion to dismiss Stoltz's adversary complaint, Cavagnetto filed her answer on January 28, 2011. On March 2, 2011, Cavagnetto filed a motion to amend her answer and add a counterclaim against Stoltz. On March 18, 2011, the Bankruptcy Court allowed Cavagnetto to file an amended answer and counterclaim, which Cavagnetto filed on March 25, 2011. Cavagnetto's counterclaim alleged that Stoltz was liable for any debt that Cavagnetto owed to the Bartons because of the Indemnification Clause.

After discovery closed on January 13, 2012, Stoltz filed for summary judgment on Cavagnetto's counterclaim on February 7, 2013. The bankruptcy court granted Stoltz's motion for summary judgment on Cavagnetto's counterclaim on April 23, 2013, and Cavagnetto appealed the bankruptcy court's ruling on May 4, 2013.

On appeal, the bankruptcy court's judgment with respect to Cavagnetto's counterclaim was reversed and remanded. In this opinion, the District Court emphasized the importance of the Indemnification Clause in the July 10, 2000 state court order and then noted that certain losses did occur during the time Stoltz managed and controlled the Berwyn Property, such as failure to make property tax payments and failure to make certain payments on the Barton Mortgage. Based on this, the case was remanded back to the bankruptcy court for further proceedings on losses to Cavagnetto.

After the case was remanded, the bankruptcy court determined—at an April 22, 2014 hearing and then again at a June 3, 2014 hearing—that it would not allow Cavagnetto to recover on the theory that Stoltz has liability to her based on the Barton Mortgage. Instead, Cavagnetto could only recover to the extent of losses suffered by the marital estate after Stoltz was given control of the Berwyn Property because that is what the Indemnification Clause in the July 10, 2000 provided.

In response to this decision, Cavagnetto filed a Rule 15 motion to amend her counterclaim by adding another count that specifically referenced her 2004 marriage dissolution decree. According to this proposed second count, Stoltz was responsible for indemnifying Cavagnetto against payments on the debt that was assigned from the Bartons to Stoltz in the marriage dissolution decree. The bankruptcy court denied this motion on July 22, 2014, stating that it was "awfully late in the game" and that allowing an amendment would not be "good for the administration of the estate."

After trial, the bankruptcy court concluded that, had the Berwyn Property sold when Cavagnetto first sought leave to sell the property in 2000, the surplus available to Stoltz and Cavagnetto would have been $33,467.12 and that Cavagnetto should be entitled to one half of that sum or $16,733.56. The bankruptcy court declined to hear evidence as to matters other than the sale of the Berwyn Property.

## JURISDICTION

This Court's jurisdiction is conferred by 28 U.S.C. § 158(a)(1), which governs appeals from "final judgments, orders, and decrees" of the bankruptcy court.

**DISCUSSION**

**I.      The Decision to Deny Cavagnetto Leave to Amend Her Counterclaim**

The first issue to consider is whether the bankruptcy court erred when it refused to allow Cavagnetto to amend her counterclaim. I will review this decision for an abuse of discretion. *See Vesely v. Armslist LLC*, 762 F. 3d 661, 666-67 (7th Cir. 2014). "[This Court] will overturn a denial of a motion for leave to amend a complaint only if the . . . court abused its discretion by refusing to grant the leave without any justifying reason." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (quotation omitted) (affirming denial of motion to amend pursuant to Rule 15(b)(2)).

A party meets its burden under this standard only when it is clear that "no reasonable person would take the view adopted by the trial court." *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008). Furthermore, "it is well-settled that we may affirm on any ground supported by the record, so long as it has been adequately presented below." *Stockwell v. City of Harvey*, 597 F.3d 895, 900 (7th Cir. 2010); *see In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010).

Any time after a responsive pleading has already been served, a party must seek leave from the court or written consent of the adverse party to amend it. *See* Fed.R.Civ.P. 15(a)(2). Although Rule 15(a) provides that leave to amend "'shall be freely given when justice so requires,' [it] is not to be automatically granted." *Johnson v. Methodist Medical Center of Ill.*, 10 F.3d 1300, 1303 (7th Cir. 1993). "[Courts] have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009) (internal citations omitted).

Cavagnetto argues that her motion to amend should have been granted because there

was no undue delay, bad faith, or dilatory motive on her part and that there were no repeated

failures to cure deficiencies by amendments previously allowed. In any event, Cavagnetto

contends, her motion would not have caused any undue prejudice to the opposing party. I

disagree. In fact, I find that several of the circumstances that would allow the bankruptcy court to

deny Cavagnetto leave to amend her counterclaim apply here.

When the bankruptcy court denied Cavagnetto's motion to amend on July 22, 2014,

Judge Cassling stated that it was "awfully late in the game" and that allowing an amendment

would not be "good for the administration of the estate." These statements invoke two valid

reasons for denying Cavagnetto leave to amend her counterclaim—undue delay and undue

prejudice.

Although delay on its own is usually not enough for a court to deny a motion to amend,

the "longer the delay, the greater the presumption against granting leave to amend." *Dubicz v.

Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (7th Cir. 2004). The burden to the judicial

system can justify a denial of a motion to amend, however, "even if the amendment would cause

no hardship to the opposing party." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909

(7th Cir. 1988). Because substantive amendments shortly before trial serve to defeat the public's

interest in speedy resolution of legal disputes, a court is entitled, in such circumstances, to

disallow a plaintiff's amendment. *Campbell v. Ingersoll Mill. Mach. Co.*, 893 F.2d 925, 927 (7th

Cir. 1990).

For this reason, Cavagnetto's attempt at amending her counterclaim four years into

litigation—not only after the close of discovery, but also after summary judgment had already

been decided and then reversed on appeal—would be unduly prejudicial to Stoltz as well as the

bankruptcy estate.

In addition to these two sufficient reasons, the bankruptcy court's decision could also be affirmed on the basis that allowing Cavagnetto to amend her counterclaim this late in the proceedings would be futile because it sets forth a theory of liability that is clearly barred by the statutes of limitations.

Cavagnetto's criticism of her marriage dissolution decree is not unreasonable—Stoltz was the only witness to testify, and he never mentioned that he and Cavagnetto owed the Bartons a mortgage deficiency from the sale of the Berwyn Property. The problem with Cavagnetto's proposed counterclaim, however, is that she is essentially seeking to modify the judgment in her January 14, 2004 marriage dissolution decree ten years after its entry.

To modify a Domestic Relations Court decision, Cavagnetto would need to bring an action under 735 ILCS 5/2-1401. A Section 2-1401 petition is not a continuation of the original dissolution proceeding, but rather a commencement of a new cause of action with the purpose of bringing to the state court's attention facts not of record which, if known by the court at the time judgment was entered, would have prevented its rendition. *See* 735 ILCS 5/2-1401.

Cavagnetto's proposal for her amended counterclaim would be futile here because a Section 2-1401 petition must be filed within two years of entry of the relevant final judgment. *Warren Cnty. Soil & Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶ 31, 32 N.E.3d 1099, 1105 (2015) (citing 735 ILCS 5/2-1401). Although the two-year period can be tolled if the ground for relief was fraudulently concealed, this exception clearly cannot apply to this case because Cavagnetto received sufficient notice when the Bartons first sued her for their mortgage deficiency in 2005—nine years before she attempted to amend her counterclaim.

For all of these reasons, I cannot conclude that the bankruptcy court abused its

discretion when it refused to allow Cavagnetto to amend her counterclaim. I am therefore affirming the decision of the bankruptcy court denying Cavagnetto leave to amend her counterclaim.

**II.      The Decision to Hold Cavagnetto Liable for the Barton Mortgage**

The second issue to consider is whether the bankruptcy court erred when it refused to apportion responsibility for the Barton Mortgage between Stoltz and Cavagnetto. Because this decision involves purely legal questions, I will review it *de novo*. *In re Davis*, 638 F. 3d 549, 553 (7th Cir. 2011). To the extent that I find there are questions of fact to be reviewed, I will review such questions for clear error. *In re Midway Airlines, Inc.*, 383 F. 3d 663, 668 (7th Cir. 2004).

The bankruptcy court held that "[Cavagnetto's] counterclaim is based on a contractual indemnity clause . . . which deals with the loss to the marital estate on its face and not with respect to any indemnity rights that may arise under the divorce judge's distribution of liabilities as between husband and wife." In her appeal, Cavagnetto argues that the Indemnification Clause covers the Barton Mortgage in its entirety and therefore Stoltz should indemnify her for all claims against her relating to the Barton Mortgage.

There is a significant overlap between this issue and the issues discussed above. I will not repeat my analysis, but I would like to add a few points. Mainly, it seems that Cavagnetto's argument revolves around a few mistaken beliefs.

First, Cavagnetto believes that an unrecorded mortgage is unenforceable. Under this mistaken belief, Cavagnetto argues that Stoltz should be required to indemnify her for the entire amount of the Barton Mortgage because it was not recorded until after the Indemnification Clause was entered. As the bankruptcy court correctly pointed out at the April 22, 2014 hearing, however, Illinois courts uphold the validity of unrecorded mortgages. *Union Cnty., Ill. v.*

8

*MERSCORP, Inc.*, 735 F.3d 730, 734 (7th Cir. 2013) (citing *Haas v. Sternbach et al.*, 156 Ill. 44 (1894)); *Schaumburg State Bank v. Bank of Wheaton*, 197 Ill.App.3d 713, 144 Ill.Dec. 151, 555 N.E.2d 48, 51–52 (1990); *Dana Point Condominium Ass'n v. Keystone Service Co.*, 141 Ill.App.3d 916, 96 Ill.Dec. 249, 491 N.E.2d 63, 67 (1986).

When two parties sign a mortgage note, as Stoltz and Cavagnetto did in 1996, both parties are jointly and severally liable for any mortgage deficiency that is created when the property is sold—whether the mortgage was recorded or not recorded. The Bartons therefore had the legal right to go after either Stoltz or Cavagnetto for the full amount of the Barton Mortgage.

Second, and this is purely a question of contract interpretation, Cavagnetto also believes that the Indemnification Clause applies to the original creation of the Barton Mortgage. This cannot be the case, however, because the Barton Mortgage was created *before* Stoltz received control of the Berwyn Property and the Indemnification Clause is limited to losses "the marital estate may incur *during* the time of [Stoltz's] management and control."

I am therefore affirming the decision of the bankruptcy court that held that Cavagnetto is liable for the Barton Mortgage.

## CONCLUSION

In sum, the bankruptcy court did not abuse its discretion when it denied Cavagnetto's request to amend the pleadings pursuant to Rule 15(b)(2). Addressed on the merits in light of the trial record, Cavagnetto's contention that the bankruptcy court clearly erred in finding that Cavagnetto was liable for the Barton Mortgage is likewise rejected. I therefore affirm the bankruptcy court's judgment.

ENTER:

James B. Zagel
United States District Judge

DATE: October 26, 2015